**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DARRELL GLEN HARRIS, et al.,

        Defendants.

Case No. 2:23-cr-00113-CDS-NJK

ORDER AND
REPORT AND RECOMMENDATION

(Docket Nos. 311, 315, 316, 317)

This matter was referred to the undersigned Magistrate Judge on Defendant Paulina Hernandez's motion to suppress intercepted wire communications and all evidence derived therefrom. Docket No. 311. The Court has considered Defendant's motion and exhibits, the United States' response and exhibits, and Defendant's reply. Docket Nos. 311, 321, 326.

Also pending before the Court is Defendant Joey McRoyal's motion for joinder to Defendant Hernandez's motion to suppress. Docket No. 315. The Court has considered this motion and the United States' response. Docket Nos. 315, 321. No reply was filed. *See* Docket.

Also pending before the Court is Defendant Lamar Rosser's motion for joinder to Defendant Hernandez's motion to suppress. Docket No. 316. The Court has considered this motion and the United States' response. Docket Nos. 316, 321. No reply was filed. *See* Docket.

Also pending before the Court is Defendant Darrell Harris' motion for joinder to Defendant Hernandez's motion to suppress. Docket No. 317. The Court has considered this motion and the United States' response. Docket Nos. 317, 321. No reply was filed. *See* Docket.

## I.    BACKGROUND

On February 10, 2023, United States District Judge Gloria M. Navarro granted the United States Attorney's application to intercept Defendants' wire and electronic communications. Docket Nos. 311-2, 311-4. This application was supported by the affidavit of Drug Enforcement Agency ("DEA") Special Agent ("SA") Anthony Martinez. Docket No. 311-3. The affidavit stated that the relevant investigation started in August 2022, when the DEA received information from a confidential source that a person who is not one of the defendants in this case was trafficking in multiple pounds of methamphetamine. *Id*. at 15.

On June 20, 2023, a federal grand jury sitting in Las Vegas, Nevada issued an indictment charging, *inter alia*, Defendants Harris, McRoyal, Rosser, and Hernandez with a total of fifteen counts, including conspiracy to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(A)(viii), and 841(b)(1)(B)(vi); distribution of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii); distribution of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(vi); engaging in the business and dealing in firearms without a license, in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D); and possession with intent to distribute cocaine, in violation of Title 21 United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2. Docket No. 2.

On July 9, 2024, the grand jury issued a superseding indictment in the instant case. Docket No. 102. The superseding indictment contained twenty-one counts against these defendants and did not substantively alter the nature of the charges against them. *Id*.

Defendants submit that SA Martinez deliberately or recklessly made "critical misstatements of fact and likely withheld key information" from Judge Navarro in the affidavit in support of the wiretap. Docket No. 311 at 3. Defendants further submit that the United States failed to exhaust necessity before applying for the wiretap by "pursuing a logical, vigorous financial investigation and other investigative opportunities to gain valuable intelligence[.]" *Id*.

Specifically, Defendants submit that SA Martinez "provided misleading and false information to establish probable cause" to include Defendant Hernandez as a target in the initial T-III wiretap application. *Id*. at 6. Defendants submit that, in the affidavit, SA Martinez twice states that Defendant Hernandez entered the stash location and exited with a package wrapped in black tape. *Id*. at 6-7. In the United States' response to a different motion, however, Defendants submit that the United States told the Court that Defendant Hernandez went to the area of the apartment complex where the stash apartment was located and returned to her vehicle carrying a package. *Id*. at 7. Defendants further submit that SA Martinez's statement that, based on his training and experience, "the package was consistent with the size, shape, and wrapping of a large quantity of narcotics" was intentionally or recklessly misleading. *Id*. at 8.

Defendants submit that, in the initial T-III wiretap application, the United States falsely stated that the black Toyota Camry used in the first controlled buy was registered to Defendant McRoyal and that, law enforcement was able to identify Defendant McRoyal by the vehicle's license plate. *Id*. at 8-9. In fact, Defendants submit, as stated by the United States in a different document, that vehicle was registered to Defendant Hernandez. *Id*. at 9. Defendants therefore characterize the statements in the affidavit as blatant lies. *Id*.

Defendants further submit that SA Martinez included a statement that Defendant Hernandez was recognized because she had been identified by jail calls she had made to

3

Defendant McRoyal. *Id*. at 10. Defendants submit that Defendant Hernandez had been in jail for one day in June 2022 and the investigation in this case started in August 2022; therefore, "[s]omething is amiss" with this statement.[1] *Id*. Defendants therefore ask the Court for a *Franks* hearing. *Id*. at 20.

Defendants further submit that the initial affidavit lacks probable cause; in support of that contention, they submit that the first controlled buy in the instant case occurred nearly six months before the United States applied for the wiretap. *Id*. at 4. During that buy, Defendants submit, Defendant McRoyal mentioned a business he owned nearby and, therefore, the United States knew that Defendant McRoyal could be using the business to launder proceeds from his alleged Drug Trafficking Organization ("DTO"). *Id*. Nonetheless, Defendants submit, the United States had not either assigned a financial analyst to assist with the investigation or asked another agency for such assistance. *Id*. Defendants present a preliminary expert report from a former Federal Bureau of Investigation ("FBI") agent in support of their contention that a financial investigation should have occurred prior to the request for a wiretap. *Id*. *See also* Docket No. 311-1 (preliminary expert report).

Defendants further submit that the United States "missed an important opportunity to gain additional intelligence" on September 22, 2022. *Id*. at 5. On this date, law enforcement officers observed Defendant Hernandez arrive at the drug stash location and leave with a package, but did not follow her to "see what she did with this alleged large package of narcotics." *Id*. at 5-6.

[1] The Court cannot discern why Defendants describe this statement as a false statement, as the affidavit clearly states that Defendant Hernandez was in custody in June of 2022 and that the jail informed agents that she placed calls of a romantic nature to Defendant McRoyal. Docket No. 311-3 at 69. The affidavit further states that Defendant Hernandez made a comment "that was potentially a reference to narcotics," but that Defendant McRoyal "told her not to talk about it on the phone." *Id*.

Defendants submit that the United States, therefore, "missed an important opportunity to fully vet" Defendant Hernandez as a potential target before listing her as a target in the initial application for a T-III wiretap. *Id*. at 6.

In response, the United States submits that Defendants have failed to meet their burden for a *Franks* hearing. Docket No. 321 at 4. The United States submits that DEA Task Force Officer ("TFO") Michael Franco is the one who observed Defendant Hernandez on September 22, 2022, and the statements made by SA Martinez in the affidavit and SA Malkovich in the DEA-6 are statements of others describing TFO Franco's observations. *Id*. at 5-6. Further, the United States submits that the descriptions are consistent. *Id*. at 6. The United States submits that the apartment on Karen was known to be the DTO's stash location prior to Defendant Hernandez's arrival. *Id*. The United States submits that SA Martinez stated that Defendant Hernandez entered the stash location and exited with a package wrapped in black tape and SA Malkovich stated that Defendant Harnandez went into the area where the apartment was located and came out with a package; therefore, the United States submits that SA Martinez's statement was simply more detailed. *Id*.

The United States further submits that jail calls are recorded and preserved and that listening to jail calls is a common investigative technique. *Id*. at 7-8. The fact that Defendant Hernandez was in custody prior to the beginning of this investigation, the United States submits, does not mean that SA Martinez made a false statement regarding the identification of Defendant Hernandez. *Id*. at 8.

Additionally, the United States submits that the statement that the Toyota was registered to Defendant McRoyal was incorrect and a mistake. *Id*. During the investigation, however, the United States submits that agents saw Defendant Hernandez driving a Dodge Charger registered

to Defendant McRoyal at his home address and that almost six months elapsed – during which the investigation continued to proceed – between the August 23, 2022, controlled buy and the February 10, 2023, affidavit supporting the request for a T-III wiretap. *Id*. The United States submits that the statement regarding the registration of the Toyota was, at most, negligence and that it's possible SA Martinez simply confused the cars and dates when drafting his affidavit. *Id*. at 8-9.

The United States submits that Defendants have failed to make a substantial preliminary showing that SA Martinez intentionally or reckless included a false statement in his affidavit. *Id*. at 9. The United States further submits that, even if the Defendants were able to satisfy the first prong of the *Franks* test, they have failed to demonstrate that these statements are material. *Id*. The United States therefore asks the Court to deny Defendants' request for a *Franks* hearing. *Id*.

Regarding probable cause, the United States submits that SA Martinez's affidavit "details, at length, recorded conversations between a DEA undercover agent, and defendants McRoyal and Rosser (using TT-1 and TT-2, respectively) to coordinate the purchase of methamphetamine and fentanyl." *Id*. at 9-10. The United States therefore submits that probable cause was clearly shown for Defendants McRoyal and Rosser. *Id*. at 10. As to Defendant Hernandez, the United States submits that it does not need to show probable cause for every target interceptee, but that the facts listed in paragraphs 104 and 136 establish probable cause as to Defendant Hernandez in any event. *Id*. at 10, n.1.

Regarding necessity, the United States submits that SA Martinez uses 14 pages of his affidavit to discuss the specific reasons the T-III wiretap is necessary to his investigation. *Id*. at 10, 12-15. The United States submits that the facts that a thorough financial investigation and further surveillance of Defendant Hernandez were not completed do not negate necessity. *Id*. at

11.    The United States submits that law enforcement officers do not need to exhaust every conceivable alternative before obtaining a wiretap. *Id*. at 12, 15-17.  The United States details that, between August 23, 2022 and February 10, 2023, law enforcement officers had conducted five controlled buys of methamphetamine and fentanyl from Defendants McRoyal and Rosser; "they had conducted physical surveillance at McRoyal's home and Rosser's stash location; they had obtained warrants to track their cellphones; they had conducted toll analysis on their phones; they had obtained pen registers and trap and traces; they had issued grand jury subpoenas for bank account information; and they had reviewed a prior jail call between McRoyal and Hernandez." *Id*. at 17.

The United States submits that further investigation of Defendant Hernandez was not necessary prior to obtaining the T-III wiretap. *Id*. at 17-19.  The United States submits that the "wiretap was necessary to achieve the overall goals of the investigation, which was to dismantle the entire drug trafficking organization, not simply identify and prosecute Hernandez." *Id*. at 19. The United States therefore asks the Court to deny Defendants' motion to suppress. *Id*. at 20.

In reply, Defendants submit they are asking for an evidentiary hearing, including a *Franks* hearing.  Docket No. 326 at 1.  Defendants submit that the statements they have identified were both false and material. *Id*. at 1-2.  Specifically, Defendants submit that the assertion in the affidavit that the Toyota was registered to Defendant McRoyal is concerning and that the United States offers a speculative justification to support its claim that the conduct was at most negligent. *Id*. at 3.  Further, Defendants submit that the United States offers no clarification as to how Defendant McRoyal was identified. *Id*.  Defendants next submit that the statements regarding the surveillance of Defendant Hernandez are concerning. *Id*. at 4.  Finally, Defendants express

concerns regarding the analysis of Defendant Hernandez's jail calls. *Id*. at 5. Defendants submit that these issues entitle them to a *Franks* hearing. *Id*.

Defendants next submit that the United States did not meet its "initial strict burden to fully and completely demonstrate probable cause and necessity." *Id*. at 6. Rather, Defendants submit, the United States "provided an overly broad application for wiretap, including individuals for which it did not have probable cause to include[.]" *Id*. Defendants further submit that the United States did not prove necessity for the T-III wiretap. *Id*. Defendants therefore ask the Court to grant their motion to suppress. *Id*.

**II.     ANALYSIS**

**1.  *Franks* hearing**

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court addressed at length whether a false statement by a government affiant invalidates a search warrant. *United States v. Hammett*, 236 F.3d 1054, 1058 (9th Cir. 2001) (citation omitted). The Court held that, under certain circumstances, a defendant is entitled to an evidentiary hearing to afford the defendant an opportunity to attack the veracity of a facially-valid affidavit used to support a search warrant. A defendant can challenge a facially valid affidavit by making a substantial preliminary showing that "(1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000) (citing *United States v. Stanert,* 762 F.2d 775, 780-81 (9th Cir. 1985)).

In making the initial determination of whether a defendant is entitled to an evidentiary hearing, *Franks* states:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

438 U.S. at 171.

*Franks* further states that if the defendant makes a substantial showing that the affidavit contains intentionally or recklessly false statements, "and if, when the material that is the subject of the alleged falsity is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.,* at 171–172. On the other hand, if the remaining content is insufficient to support probable cause, then the defendant is entitled to an evidentiary hearing. *Id.*

Intentional or reckless omissions may also provide grounds for a *Franks* hearing. *United States v. Jawara*, 474 F.3d 565 (9th Cir. 2007)); *see also United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985) ("By reporting less than the total story, an affiant can manipulate the inferences a [judge] will draw. To allow a [judge] to be misled in such a manner could denude the probable cause requirement of all real meaning"). Although "[c]lear proof of deliberate or reckless omission is not required," a "[d]efendant 'must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reason for omitting facts in order to prove a deliberate falsehood or reckless disregard." *United States v. Souffront*, 338 F.3d 809, 822-23 (7th Cir. 2003). A defendant must also show that the "affidavit, once corrected and supplemented," would not "provide ... a substantial basis for concluding that probable cause

9

existed." *Stanert*, 762 F.2d at 782. "[T]he omission rule does not require an affiant to provide general information about every possible theory, no matter how unlikely, that would controvert the affiant's good-faith belief that probable cause existed for the search." *Craighead* 539 F.3d at 1081.

In compliance with *Franks*, then, before a criminal defendant is entitled to go beneath the search warrant to obtain additional information concerning the police investigation and an informant, he or she is required to make a substantial threshold showing. A defendant's preliminary showing cannot be "merely conclusory." *Reeves*, 210 F.3d at 1044. "There must be allegations of deliberate falsehood or reckless disregard for the truth, and these allegations must be accompanied by an offer of proof." *Hammett*, 236 F.3d at 1058 (*quoting Franks*, 438 U.S. at 171). "To justify a hearing, a defendant must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof." *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008) (citation omitted). The movant bears the burden of proof and must make a substantial showing to support both elements. *See United States v. Garcia–Cruz*, 978 F.2d 537, 540 (9th Cir.1992).

The requirement of a substantial preliminary showing "is not lightly met." *United States v. Wells*, 2014 WL 12796414, at *1 (D. Alaska Jan. 16, 2014) (quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)). "[B]are assertion[s] fall[ ] short of the preponderance of the evidence that *Franks* requires." *United States v. Gutierrez*, 2012 WL 6624769, at *2 (S.D. Cal. Dec. 19, 2012) (quoting *United States v. Chavez–Miranda,* 306 F.3d 973, 979 (9th Cir. 2002)). The defendant must provide evidence to support his claim that the omissions were reckless or intentionally misleading. *See id.* (denying *Franks* hearing when

defendant "offer[ed] no evidence to support the claim that the omissions were reckless or intentionally misleading").

Here, Defendants have not made the substantial preliminary showing necessary for a *Franks* hearing. Their allegations are merely conclusory and are not accompanied by an offer of proof. *See Craighead*, 539 F.3d at 1073. In place of an offer of proof, Defendants offer only the preliminary expert report of a former FBI agent, who states that he "believe[s] the government likely made critical misstatements, withheld key information and missed opportunities to gain valuable intelligence while predicating Hernandez as a Target Subject/Target Interceptee in its initial application for its Title-III wiretap." Docket No. 311-1 at 5; see also id. at 12-15. The expert's statements and Defendants' arguments are conclusory, in that they submit that misstatements and/or omissions have been made but fail to provide evidence to support the claim that the statements and/or omissions were deliberate or intentional. *See United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) (while defendant "identified what he said were specific falsehoods in the affidavit, he offered no proof that the alleged falsehoods were deliberate or reckless. When no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a Franks hearing is not required") (internal citation omitted). Therefore, the Court finds that Plaintiffs have failed to meet the first *Franks* prong.

Additionally, Defendants have failed to show materiality - that the exclusion of the information regarding the registration of the Toyota and identification of Defendant McRoyal, as well as the surveillance of Defendant Hernandez and whether she went into the stash apartment

or the area of the stash apartment and what kind of package she was carrying would negate the probable cause in the affidavit.[2]

The probable cause standard for is whether, based on common sense considerations, there was "a fair probability that contraband or evidence of a crime [would] be found in a particular place." *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir.1992) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The issuing judge need not determine "that the evidence is more likely than not to be found where the search takes place.... The [issuing judge] need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir.1991) (citation and internal quotation marks omitted). Neither certainty nor a preponderance of the evidence is required. *United States v. Kelley*, 482 F.3d 1047, 1050–51 (9th Cir. 2007), citing *Illinois v. Gates*, 462 U.S. 213, 246 (1983) and *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) *(en banc)*.

"'Probable cause exists when, under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Rodgers*, 656 F.3d 1023, 1028 (9th Cir. 2011) (quoting *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006)). "The test for probable cause is not reducible to 'precise definition or quantification.'" *Florida v. Harris*, 568 U.S. 237, 243 (2013) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence ... have no place in the [probable-cause] decision." *Id.* at 243–44 (omission and alteration in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). All that is required is "the kind of 'fair probability' on which 'reasonable and prudent [people,] not

---

[2] The Court does not consider the statement about the jail calls as a misstatement or omission, as the affidavit clearly states that the jail calls were from June of 2022.

12

legal technicians, act.'" *Id.* at 244 (alteration in original) (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. 2317).

The Court finds that the affidavit states in detail the many encounters with alleged members of the DTO, including controlled buys and telephone calls. The affidavit also details surveillance of the members of the DTO. The affidavit clearly establishes probable cause, even if the two statements are excluded. The Court therefore finds that, even without the two statements included, Defendants have not demonstrated that probable cause did not exist for the issuance of the T-III wiretap. Accordingly, the Court denies Defendants' request for a *Franks* hearing.

### 2. Probable Cause and Necessity

When Congress enacted the wiretapping provisions of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2522, it intended to "make doubly sure that the statutory authority [for wiretaps] be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications." *United States v. Giordano*, 416 U.S. 505, 515, (1974). Narrow construction of the wiretapping provisions furthers Congress' dual purposes for the Act of "'(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized.'" *Gelbard v. United States*, 408 U.S. 41, 48, (1972) (quoting S.Rep. No. 90–1097, at 66 (1968), reprinted in 1968 U.S.C.C.A.N. 2122, 2153).

"To obtain a wiretap, the government must overcome the statutory presumption against this intrusive investigative method by proving necessity. Together, 18 U.S.C. § 2518(1)(c) and (3)(c) comprise the necessity requirement for wiretap orders." *United States v. Gonzalez,* 412

F.3d 1102, 1112 (9th Cir. 2005) (internal citations omitted).  Under 18 U.S.C. § 2518(1)(c), the government's application for a wiretap must include a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).  The district judge reviewing the application must determine that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous" before issuing an order authorizing a wiretap.  18 U.S.C. § 2518(3)(c).  "A district court must reject a wiretap application if law enforcement officers have not first attempted, without success, traditional investigative methods that easily suggest themselves and are potentially productive and not unduly dangerous."  *United States v. Carneiro,* 861 F.2d 1171, 1176 (9th Cir.1988).

The Ninth Circuit requires a "full and complete statement of specific allegations" establishing the necessity of the wiretap sought.  *United States v. Blackmon,* 273 F.3d 1204, 1207 (9th Cir. 2001).  "The review of the court 'includes an assessment of whether the affidavit attests that adequate investigative tactics were exhausted before the wiretap order was sought or that such methods reasonably appeared unlikely to succeed or too dangerous."  *United States v. Cosme,* 2011 WL 3740337, at *14 (S.D.Cal. Aug.24, 2011) (quoting *Gonzalez,* 412 F.3d at 1111).  "[T]he affidavit, read in its entirety, must give a factual basis sufficient to show that ordinary investigative procedures have failed or will fail in the particular case at hand."  *United States v. Spagnuolo,* 549 F.2d 705, 710 (9th Cir.1977).  The United States may demonstrate necessity by showing "that traditional investigative procedures (1) have been tried and failed; (2) reasonably appear unlikely to succeed if tried; or (3) are too dangerous to try."  *Gonzalez,* 412 F.3d at 1112.

14

The Ninth Circuit has adopted a "common sense approach" when reviewing necessity "to evaluate the reasonableness of the government's good faith efforts to use traditional investigative tactics or its decision to forego such tactics based on the unlikelihood of their success or the probable risk of danger involved with their use." *Gonzalez,* 412 F.3d at 1112 (citing *United States v. Blackmon,* 273 F.3d 1204, 1207 (9th Cir. 2001)). "Government investigators ... are entitled to use reason and common sense in the performance and documentation of their investigations to support applications for wiretaps. The statute does not mandate the indiscriminate pursuit to the bitter end of every non-electronic device as to every telephone and principal in question to a point where the investigation becomes redundant or impractical or the subjects may be alerted and the entire investigation aborted by unreasonable insistence upon forlorn hope." *United States v. Baker,* 589 F.2d 1008, 1013 (9th Cir.1979).

"*Each* wiretap application, standing alone, must satisfy the necessity requirement. *Carneiro,* 861 F.2d at 1176 (emphasis in original). "The government may not dispense with the statutory mandated showing of necessity to obtain a wiretap [of one conspirator's] telephone, despite the validity of the wiretap of his co-conspirator's telephone." *Id.* at 1177 (quoting *United States v. Brone,* 792 F.2d 1504, 1507 (9th Cir.1986)). On the other hand, the Ninth Circuit has found that although one specific target's situation "was not covered by specific examples of unsuccessful physical surveillance or infiltration," the affidavit "read as a whole reasonably established" as to the specific target and the other targets that other investigative procedures short of electronic surveillance would be unlikely to succeed. *Baker,* 589 F.2d at 1013.

The Ninth Circuit has recognized that, "[a]lthough a wiretap should not be used routinely as the first step in a criminal investigation, it need not be the last resort." *United States v. Smith,*

15

839 F.2d 1573, 1582 (9th Cir.1990) (*citing United States v. Bailey,* 607 F.2d 237, 241 (9th Cir.1979)).

The purpose of the necessity requirement "is to ensure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *Blackmon,* 273 F.3d at 1207. "A district court must reject a wiretap application if law enforcement officers have not first attempted, without success, traditional investigative methods that 'easily suggest themselves and are potentially productive and not unduly dangerous.'" *United States v. Carneiro,* 861 F.2d 1171, 1176 (9th Cir.1988). However, the government is not required to "exhaust every possible technique before resorting to wiretapping," *Gonzalez, Inc.,* 412 F.3d at 1113, and "[t]he necessity requirement can be satisfied by a showing in the application that ordinary investigative procedures, employed in good faith, would likely be ineffective in the particular case." *Garcia–Villalba,* 585 F.3d at 1228. The court employs a "common sense approach" to determine the reasonableness of the government's good faith efforts to use traditional investigative techniques or the decision to forgo such based on unlikelihood of success of risk of danger. *Gonzalez, Inc.,* 412 F.3d at 1112.

Where the government is investigating a conspiracy, it is "entitled to more leeway in its investigative methods." *United States v. McGuire,* 307 F.3d 1192, 1198 (9th Cir.2002). The Ninth Circuit has "'consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of ... other satellite conspirators.'" *Rivera,* 527 F.3d at 902.

"The necessity for the wiretap is evaluated in light of the government's need not merely to collect some evidence, but to develop an effective case against those involved in the conspiracy." *United States v. Decoud,* 456 F.3d 996, 1007 (9th Cir.2006). An effective case

means evidence of guilt beyond a reasonable doubt and not merely evidence sufficient to secure an indictment. *Garcia–Villalba,* 585 F.3d at 1228.

The affidavit submitted in support of the wiretap application discusses 17 investigative techniques that the United States used or determined were not likely to succeed based on the specific facts of this case: (1) confidential sources (used); (2) controlled purchases (used); (3) undercover operations (used); (4) physical surveillance (used); (5) search warrants (would alert DTO of investigation and could result in members of DTO changing habits and practices to evade law enforcement); (6) witness interviews (no witnesses have been identified who are not under investigation as part of DTO or close associates, so interviews would likely be futile and alert members of DTO to investigation); (7) grand jury subpoenas (not likely to succeed); (8) trash searches (too dangerous); (9) tracking devices (not likely to succeed); (10) GPS location data of Defendant Sparks' phone (used); (11) GPS location data of Defendant McRoyal's phone (not used because he told UC he was not in Nevada; (12) toll analysis, pen registers, and trap and trace devices (used); (13) jail calls (used); (14) trash searches (not likely to succeed); (15) financial investigations – bank accounts and CASHAPP accounts identified and Grand Jury subpoenas used for more information (used); (16) mail cover (not likely to succeed); and (17) ongoing investigations of suspected co-conspirators (used).  Docket No. 311-3 at 51–69.

Although Defendants claim that the affidavit does not sufficiently demonstrate necessity because law enforcement did not engage in a detailed financial investigation, Defendants presented no caselaw stating that the lack of a detailed financial investigation is fatal to a determination of necessity and the Court could not find any.  Further, the affidavit states that

> Financial investigations are currently being conducted on MCROYAL and the other TARGET SUBJECTS.  Investigators are trying to determine the manner, the means, and which financial institutions (if any) are being

utilized by this organization to launder the ill-gotten proceeds. Agents have identified bank accounts and CASHAPP accounts utilized by MCROYAL and SPARKS and are awaiting Grand Jury Subpoena results to further investigate MCROYAL'S and SPARKS'S activities on these accounts. Agents will continue to be diligent in attempting to find out the way MCROYAL'S organization launders the ill-gotten proceeds. However, while this information will be utilized in the event of the discovery of any future financial-related offenses, these transfers alone are not evidence of criminal offenses.

Docket No. 311-3 at 67-68.

The affidavit does more than merely recite the inherent limitations of using alternative methods; it explains in reasonably detailed fashion why such alternative methods are unlikely to succeed in achieving the goals of the investigation. The Ninth Circuit has found such explanations sufficient to satisfy the necessity requirement. *See Rivera,* 527 F.3d at 899. Moreover, as stated above, the Ninth Circuit has recognized that "[a]lthough a wiretap should not be used routinely as the first step in a criminal investigation, it need not be the last resort." *Smith,* 839 F.2d at 1582 (9th Cir.1990).[3]

. . . .

. . . .

. . . .

. . . .

---

[3]    Defendants submit that the affidavit does not establish probable cause without a detailed financial investigation or further surveillance of Defendant Hernandez that might have resulted in learning what was in the package she carried. In looking at the totality of the circumstances, the information from the confidential source, the surveillance of the alleged members of the DTO, the controlled undercover buys from different alleged members of this DTO, including Hernandez, combined with the agent's training and experience, clearly demonstrated probable cause. *See United States v. Steinman*, 159 F.4th 550, 568 (9th Cir. 2025) (quoting *United States v. Scott*, 705 F.3d 410, 417 (9th Cir. 2012)) (in determining whether probable cause exists, we "evaluate[ ] the totality of the circumstances").

III.    **ORDER AND RECOMMENDATION**

Based on the foregoing and good cause appearing therefore,

**IT IS ORDERED** that the motions for joinder filed by Defendants McRoyal, Rosser, and Harris are **GRANTED**.   Docket No. 315, 316, 317.   These defendants are allowed to join Defendant Hernandez's motion to suppress.

**IT IS FURTHER ORDERED** that Defendants' request for a *Franks* hearing is **DENIED**.

**IT IS RECOMMENDED** that Defendants' motion to suppress intercepted wire communications, Docket No. 311, be **DENIED**.

DATED: January 23, 2026.

NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).   A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.   Local Rule IB 3-2(a).   Failure to file a timely objection may waive the right to appeal the district court's order.   *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).